UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COUNCIL FOR OPPORTUNITY
IN EDUCATION,

        Plaintiff,

   v.

U.S. DEPARTMENT OF EDUCATION, et
al.,

        Defendants.

Civil Action No. 25-3514 (TSC)

**DEFENDANTS' COMBINED MOTION TO DISMISS AND OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, AND
<u>MEMORANDUM IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... ii

Background ..................................................................................................................... 1

    I.     Statutory Background ........................................................................... 1

         A.    Fiscal Year 2025 TRIO Appropriations .................................... 1

         B.    FY 2025 Federal TRIO Programs Non-Competing Continuation Awards. 3

    II.    Procedural Background ......................................................................... 6

Legal Standards ............................................................................................................. 7

    I.     Rule 12(b)(1) ........................................................................................ 7

    II.    Rule 12(b)(6) ........................................................................................ 8

    III.   Preliminary Injunction ......................................................................... 8

Argument ........................................................................................................................ 9

    I.     This Action Should be Dismissed on Numerous Grounds. ................... 9

         A.    This Court Does Not Have Jurisdiction Over Plaintiff's Claims............... 9

         B.    In the Alternative, Plaintiff's APA, Constitutional, Ultra Vires, and Mandamus Claims Fail. .......................................................... 23

    II.    Even if the Court Does Not Dismiss This Action, Plaintiff Is Not Entitled to a Preliminary Injunction. ......................................... 38

         A.    Plaintiff Is Not Likely to Prevail on the Merits of Their Claims. ............. 38

         B.    Plaintiff Cannot Establish Irreparable Harm............................... 39

         C.    The Equities and Public Interest Weigh Against Relief. .......................... 42

         D.    The Court Should Order Plaintiff to Post Bond Pursuant to Rule 65(c)... 44

Conclusion ..................................................................................................................... 46

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page**

*13th Reg'l Corp. v. U.S. Dep't of Interior*,
   654 F.2d 758 (D.C. Cir. 1980) ........................................................................ 37

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
   357 F.3d 62 (D.C. Cir. 2004) .......................................................................... 18

*Almaqrami v. Pompeo*,
   933 F.3d 774 (D.C. Cir. 2019) .......................................................................... 9

*Alphapointe v. Dep't of Veterans Affairs*,
   475 F. Supp. 3d 1 (D.D.C. 2020) ............................................................... 17-18

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*,
   121 F.4th 1314 (D.C. Cir. 2024) ..................................................................... 41

*Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.*,
   Civ. A. No. 25-1923 (JMC), 2025 WL 2615054 (D.D.C. Sept. 10, 2025) .......... 22

*Am. Ass'n of Univ. Professors v. Dep't of Just.*,
   Civ. A. No. 25-2429, 2025 WL 1684817 (S.D.N.Y. June 16, 2025) .................... 44

*Am. Chemistry Council v. Dep't of Transp.*,
   468 F.3d 810 (D.C. Cir. 2006) ......................................................................... 12

*Am. Legal Found. v. FCC*,
   808 F.2d 84 (D.C. Cir. 1987) .......................................................................... 14

*Am. Library Ass'n v. Sonderling*,
   Civ. A. No. 25-1050 (RJL), 2025 WL 1615771 (D.D.C. June 6, 2025) ............... 23

*Am. Nat'l Ins. Co. v. FDIC*,
   642 F.3d 1137 (D.C. Cir. 2011) ......................................................................... 7

*Amica Ctr. for Immigrant Rts. v. Dep't of Just.*,
   Civ. A. No. 25-298 (RDM), 2025 WL 1852762 (D.D.C. July 6, 2025) ............... 28

*Apex, Inc. v. FDA*,
   449 F.3d 1249 (D.C. Cir. 2006) ...................................................................... 38

*Appropriations Clause, Harrington v. Bush*,
   553 F.2d 190 (D.C. Cir. 1977) .......................................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 8

*Bd. of Educ. for Silver Consolidated Schs. v. McMahon*
    Civ. A. No. 25-586, 2025 WL 2017177 (D.N.M. July 18, 2025) .......................................... 26

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
    502 U.S. 32 (1991) ........................................................................................................ 35

*Bd. of License Comm'rs of Town of Tiverton v. Pastore*,
    469 U.S. 238 (1985) ........................................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 8

*Biovail Corp. v. FDA*,
    448 F. Supp. 2d 154 (D.D.C. 2006) .............................................................................. 38

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) ........................................................................................................ 24

*California v. Dep't. of Ed.*,
    132 F.4th 92 (1st Cir. 2025) .......................................................................................... 22

*Carroll v. Office of Fed. Contract Compliance Programs, Dep't of Labor*,
    235 F. Supp. 3d 79 (D.D.C. 2017) ................................................................................ 37

*Chaplaincy of Full Gospel Churches v. England*,
    454 F. 3d 290 (D.C. Cir. 2006) ..................................................................................... 39

*Citizens for Responsibility & Ethics in Wash. v. Trump*,
    924 F.3d 602 (D.C. Cir. 2019) .................................................................................. 36, 37

*Citizens for Responsibility & Ethics in Wash. v. U.S. Off. of Special Counsel*,
    480 F. Supp. 3d 118 (D.D.C. 2020) .............................................................................. 16

*City of Houston v. HUD*,
    24 F.3d 1421 (D.C. Cir. 1994) ...................................................................................... 10

*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
    58 F.3d 738 (D.C. Cir. 1995) ........................................................................................ 39

*Clinton v. Jones*,
    520 U.S. 681 (1997) ........................................................................................................ 34

*Cnty. of Santa Clara v. Trump*,
    250 F. Supp. 3d 497 (N.D. Cal. 2017) ...................................................................... 32, 33

*Coal. for Humane Immigrant Rts. v. Dep't of Homeland Sec.*,
    Civ. A. No. 25-0943 (TNM), 2025 WL 1078776 (D.D.C. Apr. 10, 2025) ............... 11, 14, 15

*Coastland Corp. v. Cnty. of Currituck*,
    734 F.2d 175 (4th Cir. 1984) ........................................................................................ 30

*Commissioned Officers Ass'n of United States Pub. Health Serv. v. Bunch*,
  Civ. A. No. 21-853 (JDB), 2022 WL 951271 (D.D.C. Mar. 30, 2022) ................................. 15

*Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*,
  313 F. Supp. 3d 285 (D.D.C. 2018) ................................................................................. 12

*Connecticut v. Dep't of Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) ................................................................................. 37

*Conservation Force, Inc. v. Jewell*,
  733 F.3d 1200 (D.C. Cir. 2013) ....................................................................................... 10

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022) .......................................................................... 18, 19, 20

*Ctr. for Auto Safety v. Dole*,
  846 F.2d 1532 (D.C. Cir. 1988) ....................................................................................... 25

*Ctr. for Biological Diversity v. Nishida*,
  Civ. A. No. 21-119 (RDM), 2021 WL 827189 (D.D.C. Mar. 4, 2021) ............................. 12

*Ctr. for Biological Diversity v. Trump*,
  453 F. Supp. 3d 11 (D.D.C. 2020) ................................................................................... 29

*Dalton v. Specter*,
  511 U.S. 462 (1994) .................................................................................................. 28, 33

*DCH Reg'l Med. Ctr. v. Azar*,
  925 F.3d 503 (D.C. Cir. 2019) ......................................................................................... 34

*Dep't of Educ. v. California*,
  604 U.S. 650 (2025) ...................................................................................... 17, 22, 43

*Diakanua v. Rubio*,
  Civ. A. No. 24-1027 (TJK), 2025 WL 958271 (D.D.C. Mar. 31, 2025) ............................. 37

*Doe v. Mattis*,
  889 F.3d 745 (D.C. Cir. 2018) ......................................................................................... 39

*DSE, Inc. v. United States*,
  169 F.3d 21 (D.C. Cir. 1999) ........................................................................................... 45

*Elm 3DS Innovations LLC v. Lee*,
  Civ. A. No. 16-1036, 2016 WL 8732315 (E.D. Va. Dec. 2, 2016) ................................... 24

*FedEx v. Dep't of Comm.*,
  39 F.4th 756 (D.C. Cir. 2022) .......................................................................................... 35

*Fisheries Survival Fund v. Jewell*,
  236 F. Supp. 3d 332 (D.D.C. 2017) ................................................................................. 39

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ........................................................................... 11, 16

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ...................................................... 14

*Franklin-Mason v. Mabus*,
  742 F.3d 1051 (D.C. Cir. 2014) .................................................... 17

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ...................................................................... 34

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016) ...................................................... 11

*Garcia v. Vilsack*,
  563 F.3d 519 (D.C. Cir. 2009) ...................................................... 24

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ...................................................................... 32

*Griffith v. FLRA*,
  842 F.2d 487 (D.C. Cir. 1988) ...................................................... 35

*Guedes v. ATF*,
  920 F.3d 1 (D.C. Cir. 2019) ............................................................ 9

*Guttenburg v. Emery*,
  26 F. Supp. 3d 88 (D.D.C. 2014) .................................................. 42

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ...................................................................... 25

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) ........................................................ 7

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ...................................................................... 11

*In re Cheney*,
  406 F.3d 723 (D.C. Cir. 2005) ...................................................... 37

*Info. Ctr. v. Presidential. Advisory Comm'n on Election Integrity*,
  878 F.3d 371 (D.C. Cir. 2017) .................................................. 13, 14

*Ingersoll-Rand Co. v. United States*,
  780 F.2d 74 (D.C. Cir. 1985) ........................................ 18, 19, 20, 23

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Donovan*,
  746 F.2d 855 (D.C. Cir. 1984) ...................................................... 27

*Jenkins v. Howard Univ.*,
    123 F.4th 1343 (D.C. Cir. 2024) ................................................. 17

*Katz v. Georgetown Uni.*,
    246 F.3d 685 (D.C. Cir. 2001) ................................................... 38

*Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*,
    56 F.3d 279 (D.C. Cir. 1995) .................................................... 18

*Kim v. FINRA*,
    698 F. Supp. 3d 147 (D.D.C. 2023) ............................................ 42

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ............................................................ 34

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ........................................................ 25, 27

*Lovitsky v. Trump*,
    949 F.3d 753 (D.C. Cir. 2020) ................................................. 36

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................... 7, 11

*Lunney v. United States*,
    319 F.3d 550 (2d Cir. 2003) ................................................... 26

*Match-EBe-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ........................................................... 17

*Mdewakanton Sioux Indians of Minn. v. Zinke*,
    264 F. Supp. 3d 116 (D.D.C. 2017) ............................................ 37

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982)............................................... 18, 20

*Mexichem Specialty Resins, Inc. v. EPA*,
    787 F.3d 544 (D.C. Cir. 2015) ................................................. 40

*Mid-Atl. Equity Consortium v. Dep't of Educ.*,
    Civ. A. No. 25-1407 (PLF), 2025 WL 2158340 (D.D.C. July 30, 2025) .............. 29

*Morrison v. Olson*,
    487 U.S. 654 (1988) ............................................................ 34

*Munaf v. Geren*,
    553 U.S. 674 (2008) ............................................................. 8

*Munsell v. Dep't of Agric.*,
    509 F.3d 572 (D.C. Cir. 2007)................................................... 10

*National Endowment for the Arts v. Finley,*
    524 U.S. 569 (1998) ................................................................ 31, 32

*National Institutes of Health v. American Public Health Association*
    145 S. Ct. 2658 (2025)............................................................. 22, 43

*Nat'l Juv. L. Ctr., Inc. v. Regnery,*
    738 F.2d 455 (D.C. Cir. 1984) ..................................................... 30

*Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.,*
    Civ. A. No. 15-1582 (APM), 2016 WL 420470 (D.D.C. Jan. 22, 2016) ............ 39

*Nat'l Urb. League v. Trump,*
    783 F. Supp. 3d 61 (D.D.C. 2025) ........................................ 29-30, 30

*NB ex rel. Peacock v. District of Columbia,*
    794 F.3d 31 (D.C. Cir. 2015) ...................................................... 29

*New Vision Photography, et al., v. District of Columbia, et al.,*
    54 F. Supp. 3d 12 (D.D.C. 2014) ................................................. 30

*Nken v. Holder,*
    556 U.S. 418 (2009) ............................................................. 8, 42

*Northrop Grumman Corp. v. United States,*
    46 Fed. Cl. 622 (Fed. Cl. 2000) .................................................. 32

*Nuclear Regulatory Comm'n v. Texas,*
    605 U.S. 665 (2025) .............................................................. 35

*Nyunt v. Chairman, Broad. Bd. of Governors,*
    589 F.3d 445 (D.C. Cir. 2009) .................................................... 35

*Off. of Pers. Mgmt. v. Richmond,*
    496 U.S. 414 (1990) ............................................................... 9

*Papasan v. Allain,*
    478 U.S. 265 (1986) ............................................................... 8

*People for Ethical Treatment of Animals v. U.S. Dep't of Agric.*
    797 F.3d 1087 (D.C. Cir. 2015) ............................................... 11, 14

*Perry Capital LLC v. Mnuchin,*
    864 F.3d 591 (D.C. Cir. 2017) ............................................ 18, 23, 24

*PETA v. U.S. Fish & Wildlife Serv.,*
    59 F. Supp. 3d 91 (D.D.C. 2014) ................................................. 37

*Printz v. United States,*
    521 U.S. 898 (1997) .............................................................. 34

*Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
   573 F. Supp. 3d 324 (D.D.C. 2021) ...................................................................... 16

*Reyes v. SBA*,
   Civ. A. No. 22-6765, 2024 WL 1195051 (S.D.N.Y. Mar. 19, 2024) .............................. 26-27

*Riley v. Bondi*,
   No. 23-1270, 2025 WL 1758502 (U.S. June 26, 2025) ........................................ 23

*Rochester Pure Waters Dist. v. EPA*,
   960 F.2d 180 (D.C. Cir. 1992) ........................................................................ 10

*Sharifymoghaddam v. Blinken*,
   Civ. A. No. 23-1472 (RCL), 2023 WL 8047007 (D.D.C. Nov. 17, 2023) .......................... 37

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) .......................................................................... 8

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002) ........................................................................ 12

*Spectrum Leasing Corp. v. United States*,
   764 F.2d 891 (D.C. Cir. 1985) ........................................................................ 20

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .................................................................................... 23

*Swan v. Clinton*,
   100 F.3d 973 (D.C. Cir. 1996) ........................................................................ 37

*Taake v. Cnty. of Monroe*,
   530 F.3d 538 (7th Cir. 2008) ........................................................................ 30

*Tanner-Brown v. Burgum*,
   Civ. A. No. 21-565 (RC), 2025 WL 2719010 (D.D.C. Sept. 24, 2025) .................. 12-13, 13

*Thomas v. Principi*,
   394 F.3d 970 (D.C. Cir. 2005) ......................................................................... 7

*Trudeau v. Federal Trade Comm'n*,
   456 F.3d 178 (D.C. Cir. 2006) ........................................................................ 38

*Turlock Irr. Dist. v. FERC*,
   786 F.3d 18 (D.C. Cir. 2015) ......................................................................... 16

*U.S. Chamber of Com. v. EPA*,
   642 F.3d 192 (D.C. Cir. 2011) ........................................................................ 12

*U.S. Conf. of Cath. Bishops v. Dept of State*,
   770 F. Supp. 3d 155 (D.D.C. 2025) ......................................................... 20, 21, 23, 44

*United States v. Texas*,
   599 U.S. 670 (2023) .................................................................................. 11

*Vera Inst. of Just. v. Dep't of Just.*,
   Civ. A. No. 25-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025) ....... 21, 22-23, 30, 36

*Versata Dev. Corp. v. Rea*,
   959 F. Supp. 2d 912 (E.D. Va. 2013) ........................................................ 24

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) .................................................................................. 29

*W. Va. Ass'n of Cmty. Health Centers, Inc. v. Heckler*,
   734 F.2d 1570 (D.C. Cir. 1984) ................................................................ 10

*Widakuswara v. Lake*,
   No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ........................ 28

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ..................................................................................... 8

*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) ................................................................ 39, 40, 41


**Statutes, Rules, Regulations, and Other Authorities**

U.S. Const. art. I, § 8, cl. 1 ........................................................................... 32

U.S. Const. art. I, § 9, cl. 7 ........................................................................... 9

U.S. Const. art. II, § 3 ................................................................................... 33, 34

U.S. Const. art. III, § 2, cl. 1 ......................................................................... 9

5 U.S.C. § 701 ............................................................................................... 23, 24, 25, 26

5 U.S.C. § 702 ............................................................................................... 17, 25

5 U.S.C. § 704 ............................................................................................... 23, 24

5 U.S.C. § 706 ............................................................................................... 25

20 U.S.C. § 954 ............................................................................................. 31

20 U.S.C. § 1070a-11 .................................................................................... 1, 3

28 U.S.C. § 1361 ........................................................................................... 36

31 U.S.C. § 1341 ........................................................................................... 9, 10

34 C.F.R. Part 75 .......................................................................................... 3, 4, 5

34 C.F.R. § 75.251 ........................................................................................ 3

34 C.F.R. § 75.253 ........................................................................................ 3, 4, 5, 26, 29, 31, 32, 37

2 C.F.R. § 200.344 ........................................................................................ 5, 6

Fed. R. Civ. P. 12 ............................................................................................ 7, 8, 24

Fed. R. Civ. P. 65 ............................................................................................ 44, 45

*Article III Limits on Statutory Standing*, 42 Duke L. J. 1219 (1993) ........................................... 11

Defendants U.S. Department of Education and Linda McMahon, in her official capacity as a Secreaty of the Department of Education (collectively, the "Department"), by and through their undersigned counsel, move to dismiss this action pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).  In addition, Defendants oppose the motion for a preliminary injunction (ECF No. 2) filed by Plaintiff Council for Opportunity in Education ("Plaintiff").

## BACKGROUND

### I.    <u>Statutory Background</u>

The Federal TRIO programs, including the Student Support Services, Educational Opportunity Centers, Ronald E. McNair Postbaccalaureate Achievement, Talent Search, Training Program for Federal TRIO Programs Staff, Upward Bound, Upward Bound Math-Science, and Veterans Upward Bound programs ("Federal TRIO Programs"), collectively, provide  "grants and contracts designed to identify qualified individuals from disadvantaged backgrounds, to prepare them for a program of postsecondary education, to provide support services for such students who are pursuing programs of postsecondary education, to motivate and prepare students for doctoral programs, and to train individuals serving or preparing for service in programs and projects so designed."  Declaration of Christopher McCaghren ("McCaghren Decl.") ¶ 4 (citing 20 U.S.C. § 1070a-11).  The Federal TRIO Programs are authorized under the Higher Education Act of 1965, as amended ("HEA"), under Title IV, Part A, Subpart 2, Chapter 1. 20 U.S.C. §§ 1070a-11 - 1070a-18.  *Id.*  The Federal TRIO Programs were most recently amended through the Higher Education Opportunity Act, Pub. L. No. 110 315, § 403(e)(4)(B), 122 Stat. 3078 (2008).  *Id.*

### A.    **Fiscal Year 2025 TRIO Appropriations.**

The Full-Year Continuing Appropriations and Extensions Act, 2025 ("2025 CR"), under Section 1101, provided funding for Education under the same "level … authority and conditions provided in applicable appropriations Acts for fiscal year 2024."  McCaghren Decl. ¶ 5 (cleaned

up).  This included extending funding under the amounts, authority and conditions authorized under the "Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 2024 (division D of Public Law 118-47)."  *Id.* (citing Pub. L. 119-4, 139 Stat. 9, 11 (Mar. 15, 2025)).

The Further Consolidated Appropriations Act of 2024 (the "2024 Appropriations Act") Higher Education account provided $3,283,296,000 "for carrying out, to the extent not otherwise provided, titles II, III, IV, V, VI, VII, and VIII of the HEA, the Mutual Educational and Cultural Exchange Act of 1961, and section 117 of the Perkins Act."  McCaghren Decl. ¶ 6.  The Federal TRIO Programs, as authorized under Title IV, Part A, Subpart 2 of the HEA, were thus funded under this Higher Education account*.  Id.*  The FY 2024 funding for the Federal TRIO programs was recommended as $1,191,000,000.[1] *Id.*  Because the 2025 CR provided funding for Education at the same level as FY 2025, the FY 2025 Federal TRIO Programs appropriation was also recommended as $1,191,000,000.  *Id.*  And, $1,190,999,999.08 of the $1,191,000,000 recommended appropriation for the Federal TRIO programs was obligated during FY 2025.  *Id.*¶ 7.  The remaining balance of $0.92 available to the Federal TRIO programs for FY 2025 lapsed on September 30, 2025.  *Id.*  No funds remain available from the FY 2025 appropriation for the Federal TRIO programs at present, *id.* ¶ 8, and funding for FY 2026 for the Federal TRIO programs has not yet been provided through any applicable appropriations act and would be contingent upon the terms of such appropriations, *id.* ¶ 9.

---

[1]      As referenced in the Conference Report accompanying the 2024 Appropriations Act (https://www.appropriations.senate.gov/imo/media/doc/fy_24_lhhs_report.pdf).

**B.    FY 2025 Federal TRIO Programs Non-Competing Continuation Awards.**

Awards under the Federal TRIO Programs are generally made for a period of five years. 20 U.S.C. § 1070a-11(b)(2). These multi-year awards are administered through separate 12-month budget periods. McCaghren Decl. ¶ 17 (citing 34 C.F.R. § 75.251(a)). A grantee, "in order to receive a continuation award from the Secretary for a budget period after the first budget period of an approved multiyear project," must meet the continuation award requirements of 34 C.F.R. § 75.253(a). McCaghren Decl. ¶ 17.

A grant recipient must agree to the terms and conditions contained in the grant award notification ("GAN") in order to receive the grant. Federal TRIO grants incorporate 34 C.F.R. Part 75 as a term and condition of the grant. McCaghren Decl. ¶ 18. In the case of a multi-year grant, funding is usually only provided for the initial budget period of not more than 12 months, and, in each subsequent year, ED must determine whether to continue the grant. *Id.* ¶ 19 (citing 34 C.F.R. § 75.251). Grant non-continuation is distinct from grant termination. *Id.* Termination ends a grant on the date specified in a termination letter—typically the same day as the letter. *Id.* Non-continuation declines to continue the grant beyond the end of the approved budget period. *Id.*

As incorporated into the Federal TRIO GANs, 34 C.F.R. Part 75 permits the Department to decline to continue grant funding after the approved budget period if the recipient fails to meet enumerated requirements, including receiving a determination from the Secretary "that continuation of the project is in the best interest of the Federal Government." McCaghren Decl. ¶ 20 (citing 34 C.F.R. §§ 75.253(a)(5), (f)). Multiyear TRIO GANs also specifically state that the award is only for the initial budget period, and that continuation of funding is dependent on future funding decisions by the Department, which will consider, among other things, whether doing so would be in the best interests of the government. McCaghren Decl. ¶ 20.

If a multi-year Federal TRIO GAN is not continued, the Secretary must "notify the grantee of the decision, the grounds on which it is based, and consistent with 2 C.F.R. § 200.342, provide the grantee with an opportunity to request reconsideration of the decision."  McCaghren Decl. ¶ 21 (citing 34 C.F.R. §75.253(g)).  The grantee must seek reconsideration by the date stated in the notice of non-continuation and "[s]et forth the basis for disagreeing with the Secretary's decision not to make a continuation award and include relevant supporting documentation."  McCaghren Decl. ¶ 21 (citing 34 C.F.R. §§ 75.253(g)(1)(i)-(ii)).

"If the Secretary decides not to make a continuation award . . ., the Secretary may authorize a no-cost extension of the last budget period of the grant in order to provide for the orderly closeout of the grant."  McCaghren Decl. ¶ 22 (citing 34 C.F.R. § 75.253(h)).  A no-cost extension is at the discretion of the Secretary, and allows funds allocated but not spent during the grant performance period to be used beyond the performance period.  McCaghren Decl. ¶ 22.  Even if the Secretary declines to authorize a no-cost extension, the TRIO grant recipient continues to have access to any previously authorized unspent funds during a 120-day liquidation period.  *Id.* ¶ 23 (citing 2 C.F.R. § 200.344).  During this period, the recipient can continue to use the funds for obligations incurred by it on or before the effective date of the non-continuation or for reasonable grant winddown and closeout costs.  McCaghren Decl. ¶ 23 (citing 2 C.F.R. § 200.472(b)).

Each of the GANs authorized funding for their initial award, incorporated 34 C.F.R. Part 75 as a term and condition of the grant, and included the following as a term and condition:

> THIS AWARD SUPPORTS ONLY THE BUDGET PERIOD SHOWN IN BLOCK 6. IN ACCORDANCE WITH 34 CFR 75.253, THE SECRETARY CONSIDERS, AMONG OTHER THINGS, CONTINUED FUNDING IF: . . .
>
> 2) THE DEPARTMENT DETERMINES THAT CONTINUING THE PROJECT WOULD BE IN THE BEST INTERESTS OF THE GOVERNMENT; . . .

McCaghren Decl. ¶ 24.

Continuation GANs were awarded for each of the seven programs identified by Plaintiff and extended through the budget period ending September 30, 2025. McCaghren Decl. ¶ 25. These continuation GANs incorporated 34 C.F.R. Part 75, as an applicable part of the Education Department General Administrative Regulations, as a term and condition of the grant, and included the same term and condition identified in paragraph 21. *Id.*

During FY 2025, consistent with the procedures for funding multi-year projects described above, the Department issued 2,251 continuation awards cumulatively across the Federal TRIO programs and notified Plaintiff's 6 grantees that they would not be receiving a continuation award for their multiyear project, based on a determination that they had not met all the requirements for receipt of continuation funding under 34 C.F.R. § 75.253(a). McCaghren Decl. ¶ 26. Each of the 6 non-continued grantees was notified in the Department's "Notice of Non-Continuation of Grant Award" letter of their opportunity to request reconsideration of this decision, consistent with 34 C.F.R. § 75.253(g). *Id.* ¶ 27.

The seven "Notice(s) of Non-Continuation of Grant Awards" transmitted to each of the 6 non-continued grantees between September 12-16, 2025, provided notification that their award would be non-continued "effective September 30, 2025." McCaghren Decl. ¶ 28. Each notice also encouraged each non-continued grantee to "carefully review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-46 and your award agreement." *Id.* For the six grantees, all six requested reconsideration. *Id.* ¶ 29.

Consistent with the closeout responsibilities of 2 C.F.R. § 200.344(c), the 6 non-continued grantees can continue to use funds previously awarded for obligations incurred by it on or before September 30, 2025, or for reasonable grant winddown and closeout costs for 120 days after the

end of the budget period on September 30, 2025. McCaghren Decl. ¶ 30 (citing 2 C.F.R. § 200.472(b)).   Between October 1, 2025, and through October 29, 2025, the following non-continued grantees identified in Plaintiff's Complaint have, consistent with 2 C.F.R. §§ 200.344, 200.472(b), drawn down funding under what would typically be considered their liquidation period:

      a.  Augsburg University (P217A220172): $474.96 ($0 balance remaining)

      b.  Suffolk University (P047V230016): $22,700.42 ($0 balance remaining)

      c.  SUNY Plattsburgh (P047A220168): $18,779.91 ($67,918.11 balance remaining)

McCaghren Decl. ¶ 31.

      The remaining non-continued grantees identified in Plaintiff's Complaint have not drawn down funding since October 1, 2025, and have following balances available under their Program (as applicable):

      a.  Marquette University (P217A220356): ($0 balance remaining)

      b.  South Seattle College (P066A210058): ($0 balance remaining)

      c.  University of New Hampshire (P217A220339): $17,863.50 balance remaining

      d.  University of New Hampshire (P044A210139): $5,188.51 balance remaining

McCaghren Decl. ¶ 32.

## II.  **Procedural Background**

      Seven "Notice(s) of Non-Continuation of Grant Awards" were transmitted to each of the Plaintiff's six named members on or around September 15, 2025, *see, e.g.,* Ex. C annexed to McCaghren Decl., and each notice indicated that their award would not be continued effective September 30, 2025, *id.*  On September 30, 2025, Plaintiff filed a Complaint for Declaratory, Injunctive and Mandamus Relief, (ECF No. 1), and a Motion for Preliminary Injunction (ECF No.

2).  Plaintiff asserts the following Nine Counts for relief:  Counts I-IV for a violation of the Administrative Procedures Act ("APA"); Count V asserts a violation of the Fifth Amendment to the U.S. Constitution; Count VI alleges a violation of the Separation of Powers and Delegation Doctrine under the U.S. Constitution; Count VII claims a violation of the Take Care Clause of the U.S. Constitution; Count VIII requests an *ultra vires* review of the Department's action; and Count IX requests a Writ of Mandamus.  *See generally* Compl.

As discussed further below, Plaintiff is not likely to succeed on the merits because its claims are essentially contractual, and therefore, jurisdiction lies exclusively in the Court of Federal Claims.  And while the district court may have jurisdiction over the grantees' constitutional claims, those claims are meritless.  Moreover, the equities strongly favor the government, which on behalf of the public must ensure the proper oversight and management of this multi-million-dollar fund.  Accordingly, Plaintiff's Motion for Preliminary Injunction should be denied and its Complaint dismissed.

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction.  *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## II.    Rule 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff.  *See Iqbal*, 556 U.S. at 678.   However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true.  *Id.*   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*   Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## III.    Preliminary Injunction

A preliminary injunction is an "extraordinary and drastic remedy" that should "never [be] awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted).  To warrant relief, the movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).  The third and fourth factors of the analysis—harm to others and the public interest— "merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I.    This Action Should be Dismissed on Numerous Grounds.

#### A.    This Court Does Not Have Jurisdiction Over Plaintiff's Claims.

##### 1.    This Matter is Moot.

The Court should dismiss this matter because Plaintiff's claims are moot. Article III of the Constitution limits a federal court's jurisdiction to deciding "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "A lawsuit becomes moot—and is therefore no longer a 'Case' or 'Controversy'—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019) (quotation marks omitted). "A case is moot if [the court's] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Guedes v. ATF*, 920 F.3d 1, 12 (D.C. Cir. 2019) (quotation marks omitted). In other words, mere "speculative contingencies" lacking in "immediacy and reality" do not suffice to prevent a claim from becoming moot. *Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (quotation marks omitted).

The Appropriations Clause provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. This "means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (quotation marks omitted). Congress has "implement[ed]" the Appropriations Clause, *Harrington v. Bush*, 553 F.2d 190, 195 (D.C. Cir. 1977), through the Anti-Deficiency Act, which provides that federal agencies "may not…make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1)(A).

The FY 2025 Federal TRIO Programs appropriation was recommended as $1,191,000,000. McCaghren Decl. ¶ 6.  $1,190,999,999.08 of the $1,191,000,000 recommended appropriation for the Federal TRIO programs was obligated during FY 2025, and the remaining balance of $0.92 available to the Federal TRIO programs for FY 2025 lapsed on September 30, 2025.  *Id.* ¶ 7.  No funds remain available from the FY 2025 appropriation for the Federal TRIO programs at present, *id.* ¶ 8, and thus this matter moot. [2]  *See also W. Va. Ass'n of Cmty. Health Centers, Inc. v. Heckler*, 734 F.2d 1570, 1572 (D.C. Cir. 1984) (claims "with respect to fiscal year 1983 funding are now moot, inasmuch as all such funds have been awarded and disbursed").   Plaintiff cannot avoid mootness by asking this Court to order the Department to "hold funds" or continue funding using funds that Congress did not appropriate, as "[i]t is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation."  *City of Houston v. HUD*, 24 F.3d 1421, 1424 (D.C. Cir. 1994); *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 184 (D.C. Cir. 1992) ("It is beyond dispute that a federal court cannot order the obligation of funds for which there is no appropriation.").

Accordingly, the Court should dismiss this case for lack of jurisdiction.  And because Plaintiff's purported member's claims are moot, so too are the same claims raised by Plaintiff in their capacity as representatives of those members.  *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1205 (D.C. Cir. 2013); *see also Munsell v. Dep't of Agric.,* 509 F.3d 572, 584 (D.C. Cir. 2007) (holding that, when an association sues on behalf of its members, its claims become moot if its members' claims become moot).

---

[2]     Also, as of this filing, funding for FY 2026 for the Federal TRIO programs has not yet been provided through any applicable appropriations act and would be contingent upon the terms of such appropriations.  McCaghren Decl. ¶ 9.

2.    Plaintiff Lacks Standing.

Standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023). It requires that a plaintiff "possess a personal stake" in the outcome, which "helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024). The standing doctrine thus "serves to protect the 'autonomy' of those who are most directly affected so that they can decide whether and how to challenge the defendant's action." *Id.* at 379–80. Standing further ensures that "'the Framers' concept of the proper—and properly limited—role of the courts in a democratic society' is vindicated, by ensuring decisions meant for the political process are left to the political process." *Coal. for Humane Immigrant Rts. v. Dep't of Homeland Sec.*, Civ. A. No. 25-0943 (TNM), 2025 WL 1078776, at *4 (D.D.C. Apr. 10, 2025) (quoting John Roberts, *Article III Limits on Statutory Standing*, 42 Duke L. J. 1219, 1220 (1993)).

Under any theory of standing, "the irreducible constitutional minimum" requires that: (1) the plaintiff have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there must exist "a causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Animals v. Jewell*, 828 F.3d 989, 991–92 (D.C. Cir. 2016) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Membership-based associations like Plaintiff can establish standing in one of two ways: they can assert "associational standing" to sue on behalf of their members, *see Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), or "organizational standing" to sue on behalf of themselves, *see People for Ethical Treatment of Animals v. U.S. Dep't of Agric. ("PETA")*, 797 F.3d 1087, 1093 (D.C. Cir. 2015).

In this case, Plaintiff brings this action on "behalf of itself and its affected members." Compl. at 2; *see also* Pl.'s Mot. at 16–18. As discussed further below, Plaintiff, however, fails to demonstrate associational standing on behalf of the unidentified members nor does it sufficiently allege organizational standing.

(a) Plaintiff Fails to Demonstrate Associational Standing for Unidentified <u>Members.</u>

To show associational standing, an organization must demonstrate that: "(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002). Also, "[w]hen a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured." *U.S. Chamber of Com. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011). "Rather, the petitioner must specifically 'identify members who have suffered the requisite harm.'" *Id.* (quoting *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 815,820 (D.C. Cir. 2006); *Ctr. for Biological Diversity v. Nishida*, Civ. A. No. 21-119 (RDM), 2021 WL 827189, at *2 (D.D.C. Mar. 4, 2021) (finding "[t]he associational-standing doctrine demands more" where organizational plaintiff failed to identify "who specifically will suffer harm–and when, how, or why they will suffer it"); *Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*, 313 F. Supp. 3d 285, 299 (D.D.C. 2018) ("[Plaintiff] fails to identify in its complaint which particular member of the organization has been harmed. . . . In this way, the complaint runs afoul of the baseline requirement to identify a particular member of the organization that was injured."). And conclusory, general reference to unidentified representatives is legally insufficient. *See Tanner-Brown v. Burgum*, Civ. A. No. 21-565 (RC),

2025 WL 2719010, at *5 (D.D.C. Sept. 24, 2025) *appeal filed,* No. 25-5374 (D.C. Cir. Oct. 22, 2025).

Here, Plaintiff states that "[d]ozens of [Plaintiff's] members recently were notified by the Department that their TRIO grants were being discontinued on or before September 30, 2025," Compl. ¶ 11, and "[t]here are many more Affected Programs, and [Plaintiff] will identify them at the appropriate time in this litigation," *id.* at 37 n. 23.  Plaintiff, however, has only named in its complaint and motion for preliminary injunction, the following purported members that have standing: (1) Augsburg University, (2) Marquette University, (3) Suffolk University, (4) South Seattle College, (5) State University of New York at Plattsburgh ("SUNY Plattsburgh"), and (6) University of New Hampshire.  *See, e.g., id.* ¶¶ 116, 141, 149; *see also, e.g.,* Pl.'s Mot. at 11; Pl's Exs. 2–8 (ECF Nos. 2-2 to 2-8).   Plaintiff appears to be suing on behalf of dozens "Affected Programs" but has not identified all specific members who have been allegedly harmed by Defendants' actions.  Defendants should not have to speculate about the remaining members, if any.  Therefore, Plaintiff has failed to demonstrate associational standing for any unidentified members and all claims, to the extent they are not dismissed for the other grounds mentioned herein, and relief should be limited to only those members who have been identified, and Defendants have been put on notice of.

(b) Plaintiff Fails to Demonstrate Organizational Standing.

Any attempt by Plaintiff to establish organizational standing fares no better.  To establish organizational standing, a plaintiff must demonstrate "that the defendant's actions cause a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's abstract social interests.'"  *Elec. Priv. Info. Ctr. v. Presidential. Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (cleaned up).  "For an organizational plaintiff to demonstrate that it has suffered an injury in fact, it must show 'more

than a frustration of its purpose,' since mere hindrance to a nonprofit's mission 'is the type of abstract concern that does not impart standing.'" *Coal. for Humane Immigrant Rts*, 2025 WL 1078776, at *4 (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (cleaned up)). Thus, to determine whether a plaintiff's allegations are sufficient to convey organizational standing, a court must find that the plaintiff satisfied two prongs: (1) the defendants' "action or omission . . . injured [the plaintiff's] interest;" and (2) that the plaintiff "used its resources to counteract that harm." *Elec. Priv. Info. Ctr.*, 878 F.3d at 378 (quoting *PETA*, 797 F.3d at 1094). Both prongs must be satisfied—if an organization fails one part of the inquiry, a court need not address the other. *id.*

In terms of the first prong, to state a sufficient injury to its interest, an organization must allege that "the defendant's conduct perceptibly impaired the organization's ability to provide services." *Food & Water Watch*, 808 F.3d at 919 (quoting *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015)). This could include showing that the challenged conduct "cause[d] an 'inhibition of [the organization's] daily operations," *id.* (second alteration in original) (quoting PETA, 797 F.3d at 1094), or that "discrete programmatic concerns are being directly and adversely affected by the defendant's actions," *Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987).

Here, Plaintiff alleges that "its core business activity is providing professional development and experiential learning opportunities to educators and students affiliated with [TRIO] programs" and its "organizational purpose has been frustrated, and its core business activities have been affected by the Department's Notices of Non-Continuation." Pl.'s Mot. at 17. Plaintiff also claims that "[i]f the Affected Programs shut down and drop their membership, that will undermine [Plaintiff's] ability to perform these core business activities." *Id.* at 17. But the Affected Programs have not shut down. The Department issued 2,251 continuation awards cumulatively across the

Federal TRIO programs and notified Plaintiff's 6 grantees that they would not be receiving a continuation award for their multiyear project. McCaghren Decl. ¶ 26. Thus, nothing alleged in the complaint or Plaintiff's motion supports the conclusion that the Department's actions have perceptively impaired Plaintiff's ability to provide services to their members, and Plaintiff is if anything facing a similarly minor reduction in income from program services from these same non-continuations. In fact, Plaintiff merely states in its Motion that "[Plaintiff] has dedicated significant resources to counteract the harm caused by the Notices on Non-Continuation" and that "[Plaintiff] has diverted resources away from its core business activities of supporting and expanding TRIO programs to address the Department's action." Pl.'s Mot. at 18. This is insufficient. Simply put, there is no claim that the Department is blocking Plaintiff from carrying out its mission, which is to offer its members educational programming, counseling, technical assistance and other services. *See* Compl. ¶10. Even so, "[c]onflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing." *Commissioned Officers Ass'n of United States Pub. Health Serv. v. Bunch*, Civ. A. No. 21-853 (JDB), 2022 WL 951271, at *5 (D.D.C. Mar. 30, 2022) (citation omitted). "Frustration of an organization's objectives is the type of abstract concern that does not impart standing nor is a mere setback to [the organization's] abstract social interests…sufficient," *id.* (citations and internal quotations omitted). And Plaintiff does not demonstrate organizational standing due to the mere fact that Defendants actions may make it "more difficult" for some but not necessarily all their operations. *See Coal. For Humane Immigrant Rts.*, 2025 WL 1078776, at *6 (organizational standing not satisfied where challenged government action merely "has made [] advocacy efforts more difficult to achieve" (cleaned up)).

If the first prong was not already fatal to Plaintiff's organizational standing, Plaintiff also fails the second prong. Plaintiff states it "has dedicated significant resources to counteract the harm caused by the Notices of Non-Continuation," "[s]ince receiving them, [Plaintiff] and the Affected Programs have been in daily contact," and Plaintiff "has diverted resources away from its core business activities of supporting and expanding TRIO programs to address the Department's action." Pl.'s Mot. at 17–18. Not all use of resources, however, will meet the second part of the test. *Citizens for Responsibility & Ethics in Wash. ("CREW") v. U.S. Off. of Special Counsel*, 480 F. Supp. 3d 118, 128 (D.D.C. 2020). Simply "divert[ing] … resources in response" to government action is not sufficient for standing. *Alliance*, 602 U.S. at 395. "The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *Turlock Irr. Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015) (citing *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995)). Organizations only suffer concrete injury if a challenged government action has made their advocacy efforts "more difficult to achieve, thereby requiring 'operational costs beyond those normally expended to ... educate' about matters that might relate to the organization['s] mission." *Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 573 F. Supp. 3d 324, 343 (D.D.C. 2021) (quoting *Nat'l Taxpayers Union*, 68 F.3d at 1434). Plaintiff has not shown that here.

Accordingly, Plaintiff fails to demonstrate organizational standing to bring this action and seek any relief.

### 3.    Plaintiff's Claims Belong in the Court of Federal Claims.

Any challenges to the non-continuation of grant agreements are not subject to this Court's jurisdiction. Plaintiff's claims are in essence contract claims that can only be brought in the Court of Federal Claims and thus, this Court lacks subject matter jurisdiction. The proper course here

would be for the parties to the grant agreements to seek appropriate recourse under the terms of the grant agreements.

"[T]he party asserting federal jurisdiction . . . has the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). To "bring a claim against the United States," the plaintiff must "identify an unequivocal waiver of sovereign immunity." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014). Plaintiff here asserts claims under the APA. Compl. ¶¶ 206–46. Although the APA provides a limited waiver of sovereign immunity for claims "seeking relief other than money damages," 5 U.S.C. § 702, that waiver of sovereign immunity does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,'" *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting 5 U.S.C. § 702). This "important carveout" to the APA's sovereign immunity waiver "prevents plaintiffs from exploiting" that waiver "to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

"[T]he APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money,'" precisely what Plaintiff seeks here. *See California*, 604 U.S. at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)). This jurisdictional barrier exists for good reason because it ensures that contract claims against the federal government are channeled into a court "that possesses expertise in questions of federal contracting law." *Alphapointe v. Dep't of Veterans Affairs*, 475 F. Supp.

- 17 -

3d 1, 11 (D.D.C. 2020); *see also, e.g., Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

Thus—regardless of how a claim is styled—a district court lacks jurisdiction over that claim if it "is in 'its essence' contractual." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)); *see also Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004). Determining whether a claim "is 'at its essence' contractual"—and therefore falls outside of the APA's waiver of sovereign immunity—"depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (quoting *Megapulse*, 672 F.2d at 968). Applying the *Megapulse* prongs here confirms that Plaintiff's claims amount to the very sort of contractual claims for monetary relief against the federal government over which this Court lacks jurisdiction.

*(a) The ultimate source of rights is the grant agreements.*

In terms of the first prong, in examining the "source of the rights" upon which the Plaintiff bases its claims, the D.C. Circuit has "rejected the 'broad' notion 'that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act.'" *Crowley*, 38 F.4th at 1107 (quoting *Megapulse*, 672 F.2d at 1107). But the Circuit has also warned that plaintiffs cannot avoid the Tucker Act and its jurisdictional consequences by artfully crafting a complaint to disguise what is essentially a contract claim as a claim for equitable relief under a separate legal authority. *Crowley*, 38 F.4th at 1107; *Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995); *see also Megapulse*, 672 F.2d at 969–70 ("This court retains the power to make rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds."). A court

must therefore consider, among other factors, whether "the plaintiff's asserted rights and the government's purported authority arise from statute"; whether "the plaintiff's rights 'exist[] prior to and apart from rights created under the contract'"; and whether "the plaintiff 'seek[s] to enforce any duty imposed upon' the government 'by the . . . relevant contracts to which' the government 'is a party.'" *Crowley*, 38 F.4th at 1107 (citation omitted).

Here, Plaintiff, like the plaintiffs in *California*, styles its claims as stemming from the APA, the core of its claims is that the Government impermissibly discontinued TRIO grant agreements and funding. *See generally* Compl. Also, like the *California* plaintiffs, Plaintiff seeks relief based upon a grant award; but Plaintiff has no statutory or constitutional right to such funding. Indeed, Plaintiff cannot, and does not, point to the APA or any regulation as the source of a right whereby Defendants must continue funding to their members. To the contrary, the source of rights underlying Plaintiff's claims are the grant agreements. The grant agreements are prototypical contracts: they set out obligations that the grantee must accept and fulfill in exchange for consideration from the government. And Plaintiff's claims are effectively based on an alleged right to continued funding under the various grant agreements. Plaintiff conspicuously does not even acknowledge that, absent the grant agreements, their members would have no basis for their claims and no interest in continued funding. Rather, Plaintiff's theories of standing, relief, and harm hinge entirely on contractual routing of funding to the grantees as provided for in the grant agreements.

Plaintiff's primary response relating to the first *Megapulse* factor is that its claims depend on the interpretation of either a regulation or statute and thus are not contractual. *See* Pl.'s Mot. at 22–24. But this line of argument is foreclosed by *Ingersoll-Rand*, 780 F.2d at 78—which Plaintiff attempts to ignore. Consider the latter, in which a contractor alleged that the Government violated

the APA by terminating a contract in violation of federal regulations. *Id.* at 77–78. The D.C. Circuit found the claim was nonetheless essentially contractual, as the contractor could "challenge the termination based solely on contract principles"—*i.e.*, the "question . . . could be phrased as whether the contract forbids termination under these conditions." *Id.* at 78. The D.C. Circuit further stated that the fact "[t]hat the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations." *Id.* So too here: the question could be whether the grant agreements permit the Department to discontinue funding under the terms and conditions of the awards. As the D.C. Circuit held in *Ingersoll-Rand*, that question must be posed to, and answered by, the Court of Federal Claims. *See also Megapulse*, 672 F.2d at 967 n.34 ("[i]t is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA" (citation omitted)).

Again, "[t]he right to [funding] is created in the first instance by the contract[s]"—not by any regulatory, statutory, or constitutional provision. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). And though some other source of law "might impose procedural requirements on the government having some impact on the contract[s]," those laws "in no way create[] the substantive right to the remedy" Plaintiff seeks. *Id.* Thus, the first prong is met.

### (b) Plaintiff seeks the classic contract remedy of specific performance.

In terms of the second prong, the relief Plaintiff seeks only confirms that its claims are essentially contractual in nature. *See Crowley*, 38 F.4th at 1110 ("We turn next to 'the type of relief sought.'"). Indeed, courts have found this factor "dispositive." *U.S. Conf. of Cath. Bishops v. Dept of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025), *appeal dismissed*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025). In *U.S. Conf. of Cath. Bishops*, for example, it was

determinative that "[t]he nature of the relief the Conference seeks"—an "order [that] the Government . . . stop withholding the money due under the Cooperative Agreements"—"'sounds in contract.'" *Id.* at 163. So too here. Plaintiff seeks an injunction "setting aside the Notices of Non-Continuation to the Affected Programs and directing the Department to immediately reconsider its action on the Affected Programs' respective TRIO grants," "extending the period of availability for fiscal year 2025 funds, beyond September 30, 2025, for any remaining unobligated fiscal year 2025 funds of the $3,080,952,000 that Congress appropriated to the Department's Higher Education budget account," "prohibiting the Department from obligating or spending any such remaining unobligated funds without notice and Court approval," and "directing that the funds will not be considered lapsed as of October 1, 2025." Compl. at 63 (Prayer for Relief ¶¶ 286(h), (l))—*i.e.*, an order that the government keep paying money due under the grant agreements. In other words, "[s]tripped of its equitable flair," Plaintiff "seeks the classic contractual remedy of specific performance." *U.S. Conf. of Cath. Bishops*, 770 F. Supp. 3d at 163 (quoting *Spectrum Leasing*, 764 F.2d at 894); *see also Vera Inst. of Just. v. Dep't of Just.*, Civ. A. No. 25-1643 (APM), 2025 WL 1865160, at *13 (D.D.C. July 7, 2025), *appeal pending,* No. 25-5248 (D.C. Cir. filed July 10, 2025) (concluding that the plaintiffs seek continued payment of the grants—in other words, specific performance and thus, the remedy sought also marks the claim as essentially contractual). And a request for an order that the government must perform or for "specific performance" on the grant agreements "must be resolved by the Claims Court." *Vera Inst. of Just.*, 2025 WL 1865160, at *13 (citing *Ingersoll-Rand*, 780 F.2d at 80). Thus, the second prong is also met because the relief Plaintiff seeks only confirms that its claims are essentially contractual in nature.

*(c)  Plaintiff Can Not Evade California or National Institutes of Health.*

Plaintiff attempts to distinguish their case from the Supreme Court's decision in *California* and *National Institutes of Health v. American Public Health Association* ("*APHA*"), 145 S. Ct. 2658 (2025) (per curiam) by arguing that these matters involved grant termination rather than grant discontinuation.  Pl's Mot. at 21.  Plaintiff's attempt fails.

In *California v. Dep't. of Ed.*, 132 F.4th 92, 96 (1st Cir. 2025), as here, "each grant award takes the form of a contract between the recipient and the government."  There, as here, the plaintiffs challenge the agency's "actions as insufficiently explained, insufficiently reasoned, and otherwise contrary to law."  *Id.* at 97.  There, as here, the plaintiffs sought "to once again make available [] federal funds for existing grant recipients"—without explicitly pleading damages or a breach of contractual terms.  *Id.*  And there, as here, the same result should follow: Plaintiff's APA claims should be dismissed because this Court "lack[s] jurisdiction to order the payment of money under the APA" in this grant withholding case.  *California*, 604 U.S. at 651.  And in *APHA* , 145 S. Ct. at 2658, the Supreme Court reaffirmed its holding in *California* that "[t]he [APA]'s 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants."

Plaintiff's claims are exactly those traditional contract claims that this Court is precluded from reviewing; *California* and *APHA* are instructive and confirms that dismissal is appropriate. *See, e.g., Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.*, Civ. A. No. 25-1923 (JMC), 2025 WL 2615054, at *2, 7–11 (D.D.C. Sept. 10, 2025) (denying preliminary injunction and "applying the D.C. Circuit's *Megapulse* test and the Supreme Court's *Department of Education* and *APHA* analysis, Plaintiffs' retrospective APA claims fall within the Court of Federal Claims' exclusive jurisdiction"); *Vera Inst. of Just.*, 2025 WL 1865160, at *13 (dismissing APA claims because they

were essentially contractual); *Am. Library Ass'n v. Sonderling*, Civ. A. No. 25-1050 (RJL), 2025 WL 1615771, at \*5–9 (D.D.C. June 6, 2025) (after granting TRO, denying preliminary injunction where plaintiffs alleged grant terminations, because *California* "cast[] doubt on district courts' jurisdiction to hear cases involving grant terminations"); *U.S. Conf. of Cath. Bishops*, 770 F. Supp. 3d at 163 (denying TRO after concluding that the court lacked the authority to "order the Government to pay money due on a contract").

\*      \*      \*

This Court must determine that it has jurisdiction before proceeding. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), *abrogated on other grounds as stated in Riley v. Bondi*, No. 23-1270, 2025 WL 1758502, at \*8 (U.S. June 26, 2025) ("Without jurisdiction the court cannot proceed at all in any cause.") (citation omitted); *see also Perry Capital*, 864 F.3d at 603 ("Before delving into the merits, we pause to assure ourselves of our jurisdiction, as is our duty."). Defendants argue in the first instance that no judicial review is available here under the APA, and the Court must first determine whether it has jurisdiction before proceeding to the merits of any argument. *Ingersoll-Rand*, 780 F.2d at 78 (Tucker Act governs challenge to contract termination, "despite plaintiff's allegations of statutory and constitutional violations.").

### B.    In the Alternative, Plaintiff's APA, Constitutional, Ultra Vires, and Mandamus Claims Fail.

#### 1.    Plaintiff's APA Claims Are Unreviewable (Counts I-IV).

To the extent the Court determines that it has jurisdiction over this matter, Plaintiff's APA claims are subject to dismissal for two reasons:  First, there are adequate alternative remedies available thus precluding Plaintiff's APA challenges, 5 U.S.C. § 704.  Second, Defendants' decisions concerning the allotment and expenditure of its lump-sum funding constitute unreviewable agency action "committed to agency discretion by law," *id.* § 701(a)(2).

(a) <u>There Are Adequate Alternative Remedies Available.</u>

The availability of adequate alternative remedies forecloses Plaintiff's APA claims. APA review is available only where "there is no other adequate remedy in a court." 5 U.S.C. § 704. The requirement that a party have "no other adequate remedy in court," *id*., reflects that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). As the D.C. Circuit has observed, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation omitted). Further, a remedy may be adequate even if "the arguments that can be raised [in the alternative proceeding] are not identical to those available in an APA suit." *Elm 3DS Innovations LLC v. Lee*, Civ. A. No. 16-1036, 2016 WL 8732315, at *6 (E.D. Va. Dec. 2, 2016). If there exists an alternative adequate judicial remedy, a plaintiff lacks a cause of action under the APA. *Perry Capital*, 864 F.3d at 621; *see Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 927 (E.D. Va. 2013) (dismissing putative APA claim under Rule 12(b)(6) because decision at issue was not a final agency action, and an alternative adequate remedy existed by way of appeal to the Federal Circuit). As already described above in § I(A)(3), Plaintiff's challenges to the non-continuation of TRIO grants are contractual in nature, and therefore the Court of Federal Claims provides an adequate alternative under the Tucker Act.

(b) Plaintiff's APA Claims Are Unreviewable Because the Department's Decisions to Discontinue Funding Are Committed to Agency <u>Discretion.</u>

Plaintiff's challenges to the non-continuation of TRIO grants fail for a separate reason: such a decision concerning how to allocate and expend federal funding is "committed to agency discretion by law" and is thus not subject to APA review. 5 U.S.C. § 701(a)(2). While the APA establishes a waiver of sovereign immunity and a cause of action for injunctive relief for parties

adversely affected by either final agency action or an agency's failure to act, *id.* §§ 702, 706(1) – (2), the waiver of sovereign immunity is limited. It does not apply in circumstances where "agency action is committed to agency discretion by law," *id.* § 701(a)(2). Review under the APA therefore is unavailable "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Where the statute does not provide any judicially manageable standard, "regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review." *Ctr. for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988).

The Supreme Court has long recognized that an agency's determination of how to allocate appropriated funds among competing priorities and recipients—precisely what Plaintiff challenges here—is classic discretionary agency action. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). In *Lincoln*, the Supreme Court underscored that the APA, by its own terms, "preclude[s] judicial review of certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Id.* at 191 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 817 (1992)). *Lincoln* then held that an agency's "allocation of funds from a lump-sum appropriation" is one such "administrative decision traditionally regarded as committed to agency discretion," given that "the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* at 192. The Court thus concluded that the agency's decision to discontinue a program that was: (1) funded through the agency's yearly lump-sum appropriations from Congress (2) but not otherwise mandated or prescribed by statute was "committed to the [agency's] discretion" and thus "unreviewable" under the APA. *Id.* at 193–94.

These same principles squarely apply to the Department's discretionary determination of how to allocate appropriated funds among competing priorities and recipients, and Plaintiff's APA claims fail because they seek to challenge decisions quintessentially "committed to agency discretion by law," for which the APA does not provide review. 5 U.S.C. § 701(a)(2). Each individualized decision made clear that the Department determined not to continue the federal award pursuant to 34 C.F.R. § 75.253(a)(5) and (f)(1). *See, e.g.*, Pl.'s Ex. 2, Augsburg's Notice of Non-Continuation ("Notice) (ECF No. 2-2) at 208; Pl.'s Ex. 3, Marquette's Notice (ECF No. 2-3) at 163; Pl.'s Ex. 4, Suffolk's Notice (ECF No. 2-4) at 281; Pl.'s Ex. 5, South Seattle's Notice (ECF No. 2-5) at 562; Pl.'s Ex. 6, SUNY Plattsburgh's Notice (ECF No. 2-6) at 294; Pl.'s Ex. 7, New Hampshire's Notice (ECF No. 2-7) at 152; Pl.'s Ex. 8, New Hampshire's Notice (ECF No. 2-8) at 343. The regulation at issue is broadly drawn and provides the Court with no meaningful standards by which to evaluate the agencies' decision. *See Lunney v. United States*, 319 F.3d 550, 557–58 (2d Cir. 2003). The regulation states that "[a] grantee, in order to receive a continuation award from the Secretary …must… [r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a), (a)(5). In determining whether a grantee is eligible for a continuation of their award, "the Secretary may consider *any* relevant information regarding grantee performance." *Id.* § 75.253(b) (emphasis added). Because these provisions are so broadly stated, at least one court has come to the same conclusion. *See Bd. of Educ. for Silver Consolidated Schs. v. McMahon*, Civ. A. No. 25-586, 2025 WL 2017177, at *11 (D.N.M. July 18, 2025) (opining that a non-continuation of a grant under 34 C.F.R. § 75.253(a)(5) "which concerned how to allocate a grant award that is, purportedly, not in the best interest of the Government—seems like a quintessential decision committed to agency discretion by law"); *cf. Reyes v. SBA*, Civ. A. No. 22-6765, 2024 WL 1195051, at *5–6 (S.D.N.Y.

Mar. 19, 2024) (holding that claims regarding the denial of an EIDL grant was unreviewable under the APA because "the word 'may' clearly connotes discretion . . . and [the] SBA's allocation of lumpsum appropriations is typically considered a discretionary act").

At bottom, an agency's determination of how best to administer appropriated funds to fulfill its legal mandates is classic discretionary agency action. *See Lincoln*, 508 U.S. at 193. As *Lincoln* made clear, the Department's "allocation of funds" from those lump-sum appropriations to various programs and priorities "requires 'a complicated balance of a number of factors,'" including whether agency "'resources are best spent' on one program or another," and "whether a particular program 'best fits the agency's overall policies.'" *Lincoln*, 508 U.S. at 193 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)). Decisions to non-continue funding was peculiarly within the Department's expertise and discretion. *See Lincoln*, 508 U.S. at 193–94; *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984) ("A lump-sum appropriation leaves it to the recipient agency (as a matter of law, at least) to distribute the funds among some or all of the permissible objects as it sees fit.").

Accordingly, Defendants decision to non-continue funding of certain TRIO grants to the Plaintiff's particular members is discretionary and thus "unreviewable under § 701(a)(2)" and cannot form the basis for Plaintiff's APA claims. *Lincoln*, 508 U.S. at 193.

2.    Plaintiff's Constitutional Claims (Counts V–VII) Lack Merit.

Plaintiff alleges that the Defendants have violated the Fifth Amendment, the Separation of Powers and Non-Delegation doctrine, and the Take Care Clause. *See* Compl. ¶¶ 247–77. Plaintiff's constitutional claims fail for the reasons further discussed below.

(a)    Plaintiff's Constitutional Claims Are Barred.

As an initial matter, Plaintiff's constitutional claims are barred at the outset because they are purely statutory. Plaintiff cannot succeed by simply repackaging their statutory claims as

alleged constitutional violations. Plaintiff claims that the challenged actions run afoul of various statutory provisions, but those are statutory claims, not constitutional claims. As the Supreme Court has made clear "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review . . ." *Dalton v. Specter*, 511 U.S. 462, 473 (1994). This keeps with the long tradition of "distinguish[ing] between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* at 472. The Constitution is implicated only if executive officers rely on it as "[t]he only basis of authority" or if the executive officers rely on an unconstitutional statute. *Id.* at 473, n.5. Neither of those situations applies here nor does the allegations in Plaintiff's complaint suggest otherwise. Plaintiff's "constitutional claims simply flow from allegations that the Executive Branch has failed to abide by governing congressional statutes, which does not suffice to trigger the distinctively strong presumptions favoring judicial review of constitutional claims." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *5 (D.C. Cir. May 3, 2025) (citing *Dalton*, 511 U.S. at 472–74 and *Ingersoll-Rand*, 780 F.2d at 78 (Tucker Act governs challenge to contract termination, "despite plaintiff's allegations of statutory and constitutional violations" (cleaned up))), *reconsideration en banc denied,* No. 25-5144, 2025 WL 1556440 (D.C. Cir. May 22, 2025), and *on reconsideration en banc,* No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025). Also, Plaintiff concedes that it "has alleged standalone constitutional claims as Counts VI and VII in its Complaint, such claims are currently barred by D.C. Circuit precedent…" Pl.'s Mot. at 38 (citing example D.C. Circuit cases).

Thus, Plaintiff cannot bring independent constitutional claims, which Plaintiff does not dispute, and therefore the Court should dismiss Counts V–VII. *See e.g., Amica Ctr. for Immigrant Rts. v. Dep't of Just.*, Civ. A. No. 25-298 (RDM), 2025 WL 1852762, at *17 (D.D.C. July 6, 2025),

*appeal filed,* No. 25-5254 (D.C. Cir. July 16, 2025) ("Plaintiffs . . . may not circumvent the Tucker

Act or the APA's reviewability bar by reframing an alleged statutory violation as a constitutional

claim.");*Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 51–54 (D.D.C. 2020)

(dismissing constitutional claims challenging border wall construction based on *Dalton*).  And,

even if the Court does not determine that Plaintiff's constitutional claims are barred at the outset,

the claims should be dismissed on the separate grounds discussed below.

> (b) Plaintiff's Void for Vagueness under the Fifth Amendment Claim
> (Count V) Fails.

Plaintiff alleges that the Department's interpretation and application of 34 C.F.R. §

75.253(a)(5) is unlawful because the Department's interpretation renders the regulation

impermissibly vague and thus void.  *See* Compl. ¶¶ 247–54.  Plaintiff's void for vagueness claim

fails for the two reasons.

*First*, Plaintiff claim fails because Plaintiff has no protected property interest in continued

grant funding.  To succeed on such a void-for-vagueness challenge, Plaintiff must show that "the

enactment is impermissibly vague in all its applications."  *Vill. of Hoffman Ests. v. Flipside*,

*Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982).  Because a void-for-vagueness challenge is

essentially a due process claim, Plaintiff must also establish the deprivation of a protected interest

in liberty or property.  *See Mid-Atl. Equity Consortium v. Dep't of Educ.*, Civ. A. No. 25-1407

(PLF), 2025 WL 2158340, at *18 (D.D.C. July 30, 2025) ("void-for-vagueness challenges under

the Fifth Amendment are essentially due process claims, which means that the NAACP Plaintiffs

must establish the deprivation of a protected interest in liberty or property to succeed on their Fifth

Amendment claim."); *see also NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C.

Cir. 2015) ("The first inquiry in every due process challenge is whether the plaintiff has been

deprived of a protected interest in 'liberty' or 'property'."); *Nat'l Urb. League v. Trump*, 783 F.

Supp. 3d 61, 92 (D.D.C. 2025) (observing that "[a] void for vagueness challenge is, at bottom, a due process claim, so Plaintiffs must show that they were deprived of a constitutionally protected property or liberty interest.").

Here, Plaintiff has not established or identified a protected property or liberty interest in a continuation of the grant funding, *see generally* Compl., which is fatal to the void-for-vagueness due process claim. *See, e.g., Vera Inst. of Just*, 2025 WL 1865160, at *16 (concluding there is no "plausible property interest in . . . grant awards"); *Nat'l Urb. League*, 783 F. Supp. 3d at 92–93 (same). In fact, Plaintiff has not identified a single instance where a federal agency terminated a contract or grant pursuant to the agreement's terms, and a court found that the termination or non-continuation of funding violated constitutional procedural rights required by law. To the contrary, courts in this District and other courts have—likewise—resisted applying due process principles to government contract disputes. *See Nat'l Urb. League*, 783 F. Supp. 3d at 91–97 (denying due process claim challenging termination of contracts and grants related to diversity, equity, and inclusion); *New Vision Photography, et al., v. District of Columbia, et al.*, 54 F. Supp. 3d 12, 28–29 (D.D.C. 2014) (denying procedural due process claim based on termination of Medicare provider contract); *Nat'l Juv. L. Ctr., Inc. v. Regnery*, 738 F.2d 455, 465 (D.C. Cir. 1984) (per curiam) (finding an insufficient interest in "continued government funding"); *Coastland Corp. v. Cnty. of Currituck*, 734 F.2d 175, 178 (4th Cir. 1984) ("A mere breach of contractual right is not a deprivation of property without *constitutional* due process of law." (cleaned up)); *Taake v. Cnty. of Monroe*, 530 F.3d 538, 541 (7th Cir. 2008) (same). Having failed to establish even a plausible property interest in the grant awards, Plaintiff's void for vagueness claim under the Fifth Amendment claim (Count V) should be dismissed.

*Second*, Plaintiff's void for vagueness claim lacks merit. The Supreme Court has squarely held that there is no constitutional guarantee of clarity in grant or contract criteria, even if these criteria are set by statute or regulation. In *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), the Court rejected a vagueness challenge to the National Foundation on the Arts and Humanities Act, which provides that grants shall be awarded according to "artistic excellence and artistic merit . . ., taking into consideration general standards of decency and respect for the diverse beliefs and values of the American public," 20 U.S.C. § 954(d)(1). The Court recognized that these standards were "undeniably opaque," such that they would raise "substantial vagueness concerns" in the context of a "criminal statute or regulatory scheme." *Finley*, 524 U.S. at 588.

However, in the context of competitive grants, the Court explained that this imprecision raised no such concerns. That is because "when the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *Finley*, 524 U.S. at 589. The challenged statute "merely add[ed] some imprecise consideration to an already subjective selection process," and neither these considerations nor the underlying selection process "impermissibly infringe[d] on First or Fifth Amendment rights." *Id.* at 590. A contrary conclusion would render unconstitutional "all Government programs awarding scholarships and grants on the basis of subjective criteria such as 'excellence,'" which the Supreme Court declined to do. *Id.* at 589 (citation omitted).

Plaintiff's assertion that the standard at issue here—whether the "continuation of the project is in the best interest of the Federal Government," 34 C.F.R. § 75.253(a)(5))—is unconstitutionally vague replicates the analysis that the Supreme Court rejected in *Finley*. A decision to terminate or not continue grants which "no longer effectuates the program goals or agency priorities," *id.*, creates no greater constitutional problem than a decision to terminate grants

that are not "excellent"—and that is so even if, "as a practical matter," putative grantees "may conform . . . to what they believe to be the decisionmaking criteria in order to acquire funding." *Finley*, 524 U.S. at 589.  So too with the government's "broad" "right to terminate a contract for convenience" under a termination for convenience clause.  *Northrop Grumman Corp. v. United States*, 46 Fed. Cl. 622, 626 (Fed. Cl. 2000).  That breadth has never been thought to create a vagueness problem, as private parties have no obligation to ascertain, or comply with, any standard that might affect the agency's own contracting decisions.  *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (void-for vagueness doctrine derives from Fifth Amendment's requirement that *restrictions* on private conduct be sufficiently clear to give a person of "ordinary intelligence a reasonable opportunity to know what is prohibited").

(c)  Plaintiff's Separation of Powers and Delegation Doctrine Claim (Count VI) Fails.

Plaintiff claims that "the Department's failure to obligate and spend the full amount of fiscal year 2025 funds for the TRIO programs is in violation of the Separation of Powers" and "[w]hen the Department interpreted and applied 34 C.F.R. § 75.253(a)(5) to give itself unfettered, unbounded authority to deny continuation awards that are statutorily mandated by Congress, it violated the Delegation Doctrine as established by the U.S. Constitution and explained by the U.S. Supreme Court."  Compl. ¶¶ 261, 264; *see also* Pl.'s Mot. at 38–39.  Plaintiff's separation of powers and the delegation doctrine claim merely repackages its other constitutional claims, and, therefore, suffers the same fate.

Article I of the Constitution confers on Congress the authority to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States."  U.S. Const. art. I, § 8, cl. 1.  Congress therefore may, "[i]ncident to" its spending power, "attach conditions on the receipt of federal funds," *Cnty. of Santa Clara v.*

*Trump*, 250 F. Supp. 3d 497, 530 (N.D. Cal. 2017) (quoting *South Dakota v. Dole*, 483 U.S. 203, 206 (1987), and "Congress can delegate some discretion to the President to decide how to spend appropriated funds" so long as "any delegation and discretion is cabined by [relevant] constitutional boundaries." *Id.* at 531.

That is precisely what has happened here. Congress has authorized the Department to administer certain grant programs, including those at issue in this case. The funding for the grants at issue were required to be obligated before the end of the fiscal year to prevent any lapses in funding. The Department's administration of the grants was within the bounds of its authority and the Department obligated all funds, except for $0.92 which lapsed on September 30, 2025. McCaghren Decl. ¶ 7. No funds remain available from the FY 2025 appropriation for the Federal TRIO programs at present. *Id.* ¶ 9. Therefore, Plaintiff's claim that the Department has violated the separation of powers, and the delegation doctrine fails.

(d) Plaintiff's Take Care Clause Claim (Count VII) Fails.

Plaintiff attempts to circumvent the limitations of jurisdiction and the APA by asserting a claim under the Take Care Clause, U.S. Const. art. II, § 3. *See* Compl. ¶¶ 266–77. Plaintiff alleges that the Department's failure to obligate the full amount of fiscal year 2025 funds for the TRIO programs is in violation of the Take Care Clause. *Id.* ¶ 273. Plaintiff, however, is incorrect because the Department obligated all funds, except for $0.92 which lapsed on September 30, 2025. *See* McCaghren Decl. ¶ 7. Notwithstanding, it should be noted at the outset that the Government is not aware of any case that ever has held that the Take Care Clause can be used as a mechanism to obtain affirmative relief. Plaintiff could not prevail on its Take Care Clause claim because the Take Care Clause does not provide a cause of action against the Department, and this Court, in any event, has no jurisdiction to issue declaratory or injunctive relief against the President in his official capacity based on constitutional claims. *See Dalton*, 511 U.S. at 473.

Moreover, the Constitution vests broad, discretionary authority to "take Care that the Laws be faithfully executed" by the President.  U.S. Const. art. II, § 3.  The Plaintiff has not sued the President, and the Take Care Clause provides no basis to review the actions of subordinate Executive Branch officials.  The Clause speaks only to the President, not to his subordinates, and ensures that the President is principally responsible for the actions of the Executive Branch and directly accountable to the people through the political process.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–93 (2010) ("It is *his* responsibility to take care that the laws be faithfully executed."); *id*. at 495–97; *see also Printz v. United States*, 521 U.S. 898, 922 (1997); *Morrison v. Olson*, 487 U.S. 654, 689-90 (1988); *Clinton v. Jones*, 520 U.S. 681, 712–13 (1997) (Breyer, J., concurring).  A subordinate Executive officer cannot violate the President's duty to faithfully execute the laws.  To the extent Plaintiff seeks to challenge the Department's alleged attempts to undermine the statutes involving the failure to continue TRIO grants, they cannot do so through the Take Care Clause, but must do so, if at all, through the APA, which in this case presents separate insurmountable obstacles for Plaintiff as shown above.

### 3.    Plaintiff's *Ultra Vires* Claim (Count VIII) Fails.

Plaintiff fails to state an *ultra vires* claim.  The leading Supreme Court decision on *ultra vires* review is *Leedom v. Kyne*, 358 U.S. 184 (1958), holding that non-statutory review was available because the agency order "was an attempted exercise of power that had been specifically withheld" and violated a "specific prohibition" in the National Labor Relations Act, *id.* 188–89. To sufficiently allege an *ultra vires* claim, the plaintiff must aver: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory."  *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (cleaned up).

The *Kyne* exception does not apply simply because an agency has arguably reached "a conclusion which does not comport with the law." *Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 666 (2025) (citation omitted). Rather, "it applies only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *Id.* (emphasis in original). Time and again, courts have stressed that *ultra vires* review has an "extremely limited scope." *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988); *see Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (*Kyne* does not "authoriz[e] judicial review of any agency action that is alleged to have exceeded the agency's statutory authority"). The D.C. Circuit has described the *Kyne* exception as "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009). Plaintiff fails to meet this demanding standard.

To begin, for all the reasons that the Tucker Act precludes APA actions for claims that are in essence contractual, the Tucker Act also impliedly precludes a non-statutory equitable *ultra vires* action based on such claims. Plaintiff can seek relief from the Court of Federal Claims, which can adequately vindicate their asserted rights by awarding damages if they prevail. Plaintiff also seeks review under the APA in this case. Plainly, then, on Plaintiff's own view, the *ultra vires* cause of action is not the only one available to them. Thus, *ultra vires* review is inappropriate—no federal statute has precluded all judicial review of the agency's conduct, *see e.g., FedEx*, 39 F.4th at 764, and Plaintiff has "an alternative review" for its claims, rendering them unable to prevail on either the first or second prongs of the ultra vires test. *Id.*; *Nuclear Regulatory Comm'n*, 605 U.S. at 682.

Although the availability of an alternate review is alone sufficient to defeat Plaintiff's ultra vires claim on the first two prongs, Plaintiff's claim also fails on the third prong, because Defendants have not violated any "clear and mandatory" statutory command.  Plaintiff merely alleges "the Department acted *ultra vires*, in excess of its statutory authorities under the [Higher Education Act of 1965]." Compl. ¶ 280; *see also* Pl.'s Mot. at 39.  This lone sentence is insufficient to demonstrate an *ultra vires* claim. Plaintiff fails to allege "that Defendants acted entirely in excess of their delegated powers and contrary to a specific prohibition in any [] statute," including the Higher Education Act of 1965.  *See Vera Inst. of Just.*, 2025 WL 1865160, at *17.  Accordingly, Plaintiff's *ultra vires* claim fails and should be dismissed.

4.    Plaintiff's Writ of Mandamus Under 28 U.S.C. § 1361 (Count IX) Fails.

Plaintiff presents its mandamus claim as a backstop to its APA claim.  *See* Compl. ¶ 285 ("If the Court determines that [Plaintiff's] requested injunction is appropriate, it need not consider this mandamus claim").  But Plaintiff is mistaken because Plaintiff's claims under the Mandamus Act are not causes of action that are meant to be sustained in the alternative.

A plaintiff seeking mandamus relief must show: (1) "a 'clear and indisputable right to relief,'" (2) "that the defendant has a "'clear duty to act,'" and (3) "that 'no adequate alternative remedy exists.'"  *CREW v. Trump*, 924 F.3d 602, 606 (D.C. Cir. 2019) (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)); *see also Lovitsky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020).   "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction."  *CREW*, 924 F.3d at 606.  And, even when these requirements are met, "a court may grant relief only when it finds compelling equitable grounds."  *Lovitsky*, 949 F.3d at 759.  Mandamus jurisdiction "is strictly confined. . . [as] mandamus is 'drastic'; it is available only in 'extraordinary situations'; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to

- 36 -

relief.'"  *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc); *CREW*, 924 F.3d at 606

("[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations.").

As discussed below, Plaintiff fails to establish these requirements.

Plaintiff does not have the clear and indisputable right to relief that is necessary to establish

mandamus jurisdiction.  Nor can Plaintiff establish the requisite duty to act.  In the context of

mandamus, the duty to be performed must be "ministerial and the obligation to act peremptory,

and clearly defined."  *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir.

1980) (quoting *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420 (1931)).  A ministerial

duty "is one that admits of no discretion, so that the official in question has no authority to

determine whether to perform the duty." *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996).

Plainly, the Department's duties as to its oversight of its grantees are not merely "ministerial."  To

the contrary, the Department's determination of how best to administer appropriated funds to fulfill

its legal mandates, including non-continuation of grants that are determined to no longer be in the

best interest of the Federal Government, is classic discretionary agency action, *see supra* at 24–

27; 34 C.F.R. § 75.253(a)(5).  Lastly, Plaintiff has ample adequate alternative remedies to bring

their claims—i.e., Plaintiff's challenges to the non-continuation of TRIO grants are contractual in

nature, and therefore the Court of Federal Claims provides an adequate alternative under the

Tucker Act.

For all these reasons, Plaintiff's mandamus claim fails.[3]

---

[3]    Lastly, although Plaintiff brings APA claims, the Court should excuse Defendants from
filing a certified list of the contents of an administrative record and serving an administrative
record simultaneously with this dispositive motion.  An administrative record is not necessary to
resolve Defendants' motion, which argues, amongst other things, that this Court lacks jurisdiction
and judicial review is not available in this case—which are threshold legal issues that do not require
review of the administrative record. *See, e.g., Diakanua v. Rubio*, Civ. A. No. 24-1027 (TJK), 2025
WL 958271, at *11 n.10 (D.D.C. Mar. 31, 2025) ("[T]he Court will 'follow the general practice'

**II.    Even if the Court Does Not Dismiss This Action, Plaintiff Is Not Entitled to a <u>Preliminary Injunction.</u>**

Courts cannot grant requests for sweeping mandatory injunctive relief absent a strong showing that all elements of the preliminary injunction standard have been met, namely that Plaintiff demonstrates: (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) a balance of the equities in its favor; and (4) accord with the public interest. Plaintiff fails to meet its burden and standing, a preliminary injunction is unwarranted, as explained below.

**A.    Plaintiff Is Not Likely to Prevail on the Merits of Their Claims.**

Plaintiff is not likely to prevail on the merits of their claims. A plaintiff that cannot demonstrate a significant likelihood of success on the merits has no hope of obtaining a preliminary injunction. *See Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006); *Katz v. Georgetown Uni.*, 246 F.3d 685, 688 (D.C. Cir. 2001); *Apex, Inc. v. FDA*, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006). "[A]bsent a 'substantial indication' of likelihood of success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'" *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, (D.D.C. 2006) (quoting *American Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999)). As discussed in great length above, Plaintiff cannot establish that the Court has

---

and deny that motion because 'the administrative record is not necessary for the Court's decision.'" (citation modified; quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022))); *Sharifymoghaddam v. Blinken*, Civ. A. No. 23-1472 (RCL), 2023 WL 8047007, at *3 (D.D.C. Nov. 17, 2023) ("In any case, courts in this District routinely allow agencies to waive compliance with Rule 7(n)(1) if 'the administrative record is not necessary for the court's decision.'" (quotation omitted)); *Connecticut v. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (Court waived Federal Defendants compliance with Local Civil Rule 7(n)); *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) (same); *Carroll v. Office of Fed. Contract Compliance Programs, Dep't of Labor*, 235 F. Supp. 3d 79, 81 n.1 (D.D.C. 2017) (same); *PETA v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014) (same).

jurisdiction, let alone demonstrate that it will prevail on the merits. *Supra* at 9–37. Because Plaintiff it not likely to prevail in this matter the Court should deny Plaintiff's motion.

**B.      Plaintiff Cannot Establish Irreparable Harm.**

Plaintiff is unable to demonstrate irreparable harm. The "standard for irreparable harm is particularly high in the D.C. Circuit." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017). If a party makes no irreparable injury showing, a court may deny a motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Wis. Gas Co. v. FERC,* 758 F.2d 669, 674, 676 (D.C. Cir. 1985) (because movants could not establish irreparable harm, the court need not address any of the other factors). The injury "must be both certain and great; it must be actual and not theoretical [and] . . . of such imminence that there is a 'clear and present' need for equitable relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F. 3d 290, 297 (D.C. Cir. 2006) (citation omitted); *Doe v. Mattis*, 889 F.3d 745, 782 (D.C. Cir. 2018) (injury must be "certain," "great" and "actual"). "A movant's failure to show any irreparable harm is . . .grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches,* 454 F. 3d at 297 (D.C. Cir. 2006).

A movant must substantiate that the irreparable injury is "likely" to occur in the absence of relief. *See, e.g.*, *Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, Civ. A. No. 15-1582 (APM), 2016 WL 420470, at *8 (D.D.C. Jan. 22, 2016) ("The movant bears the burden of substantiating, with evidence, that the injury is certain, imminent, great, and beyond remediation"). The vague allegations about *possible* future harms contained in Plaintiff's Complaint fall far short of showing the D.C. Circuit requires of an applicant for a preliminary injunctive relief. *See*, *e.g.*, *Chaplaincy of Full Gospel Churches,* 454 F. 3d at 297 (noting the Circuit's "high standard for irreparable injury"). "Bare allegations of what is likely to occur are of no value" because the district

court must make the determination of "whether the harm will *in fact* occur." *Wis. Gas Co.*, 758 F.2d at 674 (emphasis in original).

While ordinary economic injuries are usually insufficient to require injunctive relief, financial harm can "constitute irreparable harm . . . where the loss threatens the very existence of the movant's business[,]" events that Plaintiff is complaining about have already occurred. *Wis. Gas Co.*, 758 F. 2d. at 674. The loss of grant funds during this litigation is not irreparable because the harm is speculative and otherwise compensable through monetary damages.

Plaintiff alleges that their specified members' TRIO projects are closing, staff and faculty are being laid off, and students are losing resources. *See* Compl. at 4; Pl.'s Mot. at 41–42. Plaintiff also alleges without any supporting facts, that "COE will suffer immediate harm without an injunction." Pl.'s Mot. at 40. And speculates that the designated affected programs "*appear* to be ineligible" for prior experience points in future grant competitions, and thus that the affected programs "*may* be unable to score high enough to receive future grant awards" or may receive a lesser amount of grant money if successful. *See* Compl. ¶¶ 151–62; Pl.'s Mot. at 44. Plaintiff also states that "the maximum amount of new TS and EOC grants in 2026 would be suppressed by hundreds of thousands of dollars for the same reason: they would not have an existing EOC or TS grant." *See* Compl. ¶¶ 163–72; Pl.'s Mot. at 44. Accepting Plaintiff's statements *arguendo*, that Plaintiff and its designated members would suffer irreparable harm because of their continued reliance on this grant money. These claims are, at their core, arguments of economic harm.

It is well-established that "economic loss does not, in and of itself, constitute irreparable harm." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (cleaned up). This Circuit has recognized only one exception, for pecuniary loss that "threatens the very existence of the movant's business." *Wis. Gas Co.*, 758 F.2d at 674. This exception generally

applies when government action threatens the existence of an independent private entity.  *See, e.g.,* *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1329 (D.C. Cir. 2024) (finding irreparable harm when a financial services firm would be forced to shutter if regulatory action took effect during litigation).  Here, the grantees do not fall within this exception.  While litigation is pending, the grantees may have to scale down their operations or return to the operational status they had before they received federal funds. Although this causes some harm, the harm is readily compensable through damages and therefore is not irreparable. Plaintiff has not shown or even alleged that the economic loss "threatens the very existence of their business." *Wis. Gas Co.*, 758 F.2d at 674.

Most of Plaintiff's revenue is not derived from Program Services, but rather from contributions.  Only 38.4% of Plaintiff's total revenue or 3,665,145 is derived from Program Services, while 59.4% of its total revenue or $5,669,296 is derived from contributions. *See* https://projects.propublica.org/nonprofits/organizations/521221301 (last accessed Nov. 9, 2025). Some major financial contributors, publicly available, include the following**:** Lumina Foundation for Education; Ascendium Education Solutions; The California Endowment; Chevron; The David & Lucile Packard Foundation; Central Valley Community Foundation; and CalViva Health.  *See* https://www.google.com/search?q=Council+of+Educational+Opportunity+financial+contributors (last accessed Nov. 9, 2025).  In light of this information, while Plaintiff may lose some income from its program services, it is clear that Plaintiff has multiple streams of potential income and thus, exaggerates the purported harm.  Accordingly, Plaintiff fails to demonstrate that the economic loss "threatens the very existence of their business." As far as the individual members are concerned there is nothing to show that they will not be eligible for grants in the future and in fact, the Department has a demonstrated history of funding applications without "prior experience"

points under the same Talent Search and EOC programs mentioned by Plaintiff.  *See* McCaghren Decl. ¶ 34.    Additionally, any adverse effect on reputation is redressed through monetary compensation and does not qualify as irreparable harm.  *See Guttenburg v. Emery*, 26 F. Supp. 3d 88, 103 (D.D.C. 2014).  Further, any allegation that the affected programs will not be able to receive prior experience points during future grant competitions, *see* Pl.'s Mot. at 37–43, or that they will not be able to seek the same amount of their previous grant awards during future competitions, *id*., pertains to economic damages and monetary relief, which is disallowed under the APA and is more appropriate for a contract action in the Court of Claims.

### C.    The Equities and Public Interest Weigh Against Relief.

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party."  *Nken*, 556 U.S. at 435.  These factors tilt decisively against granting a preliminary injunction here.  *See Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims."), *appeal dismissed,* No. 23-7136, 2025 WL 313965 (D.C. Cir. Jan. 27, 2025). Plaintiff does not seek to preserve the status quo but instead desires to alter or interfere with the Department's authority to administer its grant programs and so the public interest tips against issuance of an injunction because Plaintiff has not met at least the first two prongs for injunctive relief.

Plaintiff is wrong that the Department will suffer no harm.  *See* Pl.'s Mot. at 45.  The Supreme Court's decision in *APHA* and *California* underscores why the remaining injunction factors tip in Defendants' favor.  As those decisions noted, the harm Defendants would face if the Court were to order the reinstatement of the grant award contracts pending final resolution of the case—which is what Plaintiff effectively demands—would be irreparable given that the funds

released to a plaintiff "'cannot be recouped' and are thus 'irrevocably expended,'" *APHA* , 145 S. Ct. at 2658 (quoting *Phillip Morris USA Inc. v. Scott*, 56 U.S. 1301, 1304 (2010), or given that Defendants would be "unlikely to recover the grant funds once they are disbursed." *California*, 604 U.S. at 651–52.

In *APHA*, the Court found irreparable harm to the government from the release of grant funds to plaintiffs, who did "not state they will repay grant money if the Government ultimately prevails," and who contended that they lacked the resources to continue to fund their project without the funds as this was "inconsistent with the proposition that they have the resources to make the Government whole for money already spent." *Id*. The same is true here. Plaintiff has not stated that it will repay the Government for the expended funds should the Government prevail. In fact, Plaintiff affirmatively asks the Court to order "to waive the bond requirement for preliminary injunctions." Pl.'s Mot. at 45. And, as in *APHA*, Plaintiff claims it and its members cannot continue with their programs without the funding, which is inconsistent with the notion that it will repay the Government for any expended funds. *See id.* at 40–44. As such, should the Government prevail, any funds released to Plaintiff would be "irrevocably expended." *APHA*,145 S. Ct. at 2658.

Also, equity weighs against granting injunctive relief because no funds remain available from the FY 2025 appropriation for the Federal TRIO programs at present. *See* McCaghren Decl. ¶¶ 7, 8. Plaintiff, however, seeks unfettered access to any remining funding (where none exists) and seeks to hamstring the Government from lawfully effectuating policy decisions with respect to funding and agency priorities. *See, e.g.*, Pl.'s Proposed Order (ECF No. 2-9) at 2 (Plaintiff requests that the Court order "any unobligated fiscal year 2025 funds remaining from the $3,080,952,000 that Congress appropriated to the Department's Higher Education budget account

as part of the Full-Year Continuing Appropriations and Extensions Act are not to be spent, obligated, or otherwise made unavailable during the pendency of this lawsuit, and such funds will not be considered lapsed as of October 1, 2025.").  The scope of injunctive relief that the Court can grant here is limited by separation of powers principles.  Even where jurisdiction is proper, a court cannot "specifically order" the federal government "to continue to contract" with specific parties, as such relief would undermine the "Executive discretion" that "both the Constitution and Congress's laws have traditionally afforded" with respect to "how to spend" appropriated funds "within the constraints set by Congress." *Aids Vaccine Advoc. Coal. v. Dep't of State*, 770 F. Supp. 3d 121, 154 (D.D.C.), *vacated and remanded sub nom. Glob. Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025).  Because no funds remain available from the FY 2025 appropriation for the Federal TRIO programs at present, any such injunction should not be granted here.

Moreover, the public also has an interest in the judiciary respecting the Executive Branch's ability to lawfully direct and guide agencies' spending decisions, and, in particular, ensuring that tax dollars are allocated to grant programs that most effectively advance the priorities of the Department.  Also, there is no public interest in compelling federal agencies to make discretionary funding decisions. *See Am. Ass'n of Univ. Professors v. Dep't of Just.*, Civ. A. No. 25-2429, 2025 WL 1684817, at *14 (S.D.N.Y. June 16, 2025) (rejecting the plaintiffs' arguments regarding the public interest and equities because the court should not "direct the policies of the [Government] first and ask questions later").

Accordingly, on these facts, the balance of the equities and the public interest militate against the entry of relief.

### D.    The Court Should Order Plaintiff to Post Bond Pursuant to Rule 65(c).

If the Court enters a temporary restraining order or preliminary injunction the Court should require Plaintiff to post an appropriate bond commensurate with the scope of any such temporary

order.  Federal Rule of Civil Procedure 65(c) states, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  This Rule provides "broad discretion in the district court to determine the appropriate amount of an injunction bond."  *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999).

Plaintiff requests that "any unobligated fiscal year 2025 funds remaining from the $3,080,952,000 that Congress appropriated to the Department's Higher Education budget account as part of the Full-Year Continuing Appropriations and Extensions Act are not to be spent, obligated, or otherwise made unavailable during the pendency of this lawsuit, and such funds will not be considered lapsed as of October 1, 2025."  Pl.'s Proposed Order (ECF No. 2-9) at 2.  In accordance with both Rule 65(c) and the President's March 11, 2025, Memorandum titled "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)," *see* https://www.whitehouse.gov/presidentialactions/2025/03/ensuringthe-enforcement-of-federal rule-of-civil-procedure-65c/, Defendant respectfully request that the Court order Plaintiff to post a bond for $2,930,308.00 in FY 2025 funding, which is the amount Plaintiff's identified six members would have received if each of their respective grants was continued in full for fiscal year 2025.  At bottom, this case ultimately involves money, and thus, the requirements of Rule 65(c) to post security are plainly at play.

\*      \*      \*

- 45 -

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff's Complaint and deny Plaintiff's motion for a preliminary injunction.

Dated: November 10, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____ */s/ Heather Graham-Oliver* _____
      HEATHER GRAHAM-OLIVER
      STEPHANIE R. JOHNSON,
      D.C. Bar # 1632338
      Assistant United States Attorneys
      Civil Division
      601 D Street, NW
      Washington, DC 20530
      Telephone: (202) 252-2520
      Email: heather.graham-oliver@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COUNCIL FOR OPPORTUNITY
IN EDUCATION,

        Plaintiff,

    v.

U.S. DEPARTMENT OF EDUCATION, et
al.,

        Defendants.

Civil Action No. 25-3514 (TSC)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's motion for a preliminary injunction, Defendants'

motion to dismiss, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED,

ORDERED that Defendants' motion is GRANTED, and it is further

ORDERED that this action is DISMISSED.


SO ORDERED:


_____
Date

_____
TANYA S. CHUTKAN
United States District Judge